## Coxe *et al.* *versus* Deringer *et al.*

1. A treasurer's sale in 1820 was made on the 8th of November, it did not appear that the sale had been *adjourned* from the second Monday of June; a deed was delivered in pursuance of the sale. The subsequent records in the commissioners' and treasurer's office were made up as if the sale had been regular. *Held*, that the absence of entries of adjournment of the sale was a defect of form and an irregularity in the process and cured by the Act of 1815.

2. Where possession of unseated land is not taken by the purchaser at treasurer's sale, the mere lapse of time proves nothing in favor of a title; the older the title without claim the weaker.

3. Land was bought at treasurer's sale by the commissioners; they executed a deed to a purchaser from them, reciting the performance of all the conditions requisite to support the title conveyed; the proceedings were spread on the records and their regularity not questioned by the county authorities. *Held* to be facts from which the jury might find that the directions of the Act of Assembly had been complied with.·

4. The question was as to the validity of the title of a tract purchased at a tax sale; other tracts contiguous were treated as a single body and had also been bought at the same time by the same purchaser. Evidence that the taxes on all were charged in one account in the treasurer's book, and other evidence affecting all the tracts similarly to the first was admissible, being of facts with which the first was inseparably connected.

5. A deed recited a tax sale to the commissioners to have been made in 1828, in a book of the commissioners in which charges of taxes were made against the owner, there was a credit for the taxes dated in 1829 and a note that the taxes were "paid before sale" twice made after the credit. *Held*, not to be evidence of the payment of taxes before the sale, to countervail the deed to the commissioners.

6. The statement of official acts by a county treasurer in their appropriate places and correct order are evidence; but statement of a fact resting in his own or others' recollection, will not weigh against his deed.

March 12th 1875.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Luzerne county:* Of January Term 1874, No. 326.

This was an action of ejectment for a tract of land in Sugarloaf township, in the warrantee name of Samuel Rope, containing 400 acres, brought, May 3d 1872, by Theophilus T. Deringer and others, against Charles S. Coxe and others.    The plaintiffs are the heirs and legal representatives of Henry Deringer, deceased.

The case was tried, February 6th 1874, before Harding, P. J.

The plaintiffs gave in evidence warrant dated January 9th 1793, to Samuel Rope, and survey, October 4th 1793, for 372½ acres and allowance.

COMMISSIONERS' UNSEATED LAND BOOK FOR 1818—SUGARLOAF.
372 acres, Samuel Rope, val. $372, tax, $1.86.

For 1819, same.    The books are called " Commissioners' Lists."

ASSESSMENT BOOKS FOR 1818 AND 1819—SUGARLOAF.
1818—Rope, Samuel, 372 acres, no valuation, no tax.
1819—Rope, Samuel, 372 acres, val. $372, tax, $1.86.

[Coxe *v.* Deringer.]

TREASURER'S SALE BOOK FOR 1820—SUGARLOAF.

| Acres. | Warrantee's name. | Years. | County tax. | Costs. | Total. | Purchaser. |
|--------|-------------------|--------|-------------|--------|--------|------------|
| 372 | Rope, Samuel, | 1818 | $1.86 | | | Nov. 8 |
| | | 1819 | 1.86 | 2.62½ | 6.34½ | Com'rs |

Having given the foregoing in evidence, the plaintiffs offered the treasurer's sale book and treasurer's deed, showing the sale of the tract, November 8th 1820, to the county commissioners for the taxes of 1818, 1819.

The defendants objected to the offer, because the sale was made on November 8th 1820, instead of on the second Monday of June, as required by law, and there is no evidence that there was an adjournment on the said second Monday of June, either from day to day or to a particular day, and the sale therefore was invalid.

The offer was admitted, and a bill of exceptions sealed.

The plaintiffs read deed dated December 2d 1820, from George M. Hollenbach, treasurer, to the county commissioners for the Samuel Rope, Sugarloaf, 372, sold for taxes of 1818, 1819. They gave in evidence:—

COMMISSIONERS' LAND BOOK—FOR LANDS BOUGHT AT TREASURER'S SALES OF 1820.

SUGARLOAF.

| Acres. | Warrantee name. | Am't of sale. | | Taxes added. County tax. | Road tax. |
|--------|-----------------|---------------|------|---------------------------|-----------|
| 372 | Rope, Samuel, | $6.59½ | 1819 | | 1.86 |
| | | | 1820 | 1.86 | 1.86 |
| | | | 1821 | 1.86 | 1.86 |
| | | | 1822 | 1.86 | 1.86 |
| | | | 1823 | 1.86. | 1.86 |
| | | | 1824 | 1.86 | 1.86 |
| | | | 1825 | 1.86 | |

1827, June 5th. Deed, Henry Deringer; consideration, $34.04½; road tax, $11.16.

1827, June 5th. Deed, Deodat Smith and others, commissioners of Luzerne county, to Henry Deringer for Rope, Samuel, 372 acres, reciting public sale of July 8th 1826; consideration, $34.04½; June 9th 1827, receipt of treasurer for bid, &c., attached. Patent, March 12th 1830, Commonwealth to Henry Deringer, for the Samuel Rope, containing 372 acres, reciting sale of treasurer to commissioners, and their conveyance to Deringer.

The plaintiffs rested.

The defendants gave in evidence:—

The application, warrant and survey of the Samuel Rope tract, with certified copy of William Grey's returns of surveys, April 28th 1794, including Samuel Rope. Deed, March 1st 1794, Samuel Rope to William Steedman, for above tract; proved October 19th 1839. Deed poll, September 31st 1794. Endorsed on the above, Steedman to Tench Coxe for the Samuel Rope tract; proved

[Coxe v. Deringer.]

in 1839. Deed of assignment for benefit of creditors, March 20th 1801, Tench Coxe to Peter S. Duponceau and others, for all the lands of assignor, wherever situate; recorded in Luzerne county. Conveyances from his co-assignees having been made to Peter S. Duponceau, he, on the 9th of June 1828, conveyed to Charles Sidney Coxe. Admitted that Tench Coxe was dead, and that the defendants are his heirs and legal representatives.

Defendants then gave in evidence:—

ASSESSMENT BOOKS FOR SUGARLOAF TOWNSHIP FOR 1826 AND 1827.

1826—372 acres, Rope, Samuel, commissioners, 1820, val. 372.

1827—372 acres, Rope, Samuel, commissioners, 1820.

COMMISSIONERS' BOOK OF COUNTY RATES AND LEVIES, 1826-27-28—SUGARLOAF.

1827—372 acres, Rope, Samuel, val. $372, tax, $1.86.
　　Supposed for 1828,　　　　　　372, tax, 1.86.

Under head of Reputed Owners, " Commissioners, 1820, sold to Henry Deringer in 1826."

COMMISSIONERS' LIST TO TREASURER FOR 1826 AND 1827—SUGARLOAF

372 acres, Rope, Samuel, val. for 1827, $372, county tax, $1.86.

Under head of Reputed Owners, " Commissioners 1820, sold to Henry Deringer in 1826—road tax for 1827, $1.86."

1828. Deed, Zurah Smith, treasurer of Luzerne county, to John Bittenbender and others, commissioners of Luzerne county, for Samuel Rope tract, reciting sale for taxes, 25th Nov. 1828.

COMMISSIONERS' BOOK CONTAINING PURCHASES OF COUNTY LANDS BY COMMISSIONERS FROM 1816 TILL 1836.

At treasurer's sale of 1828, Sugarloaf Township.

| Acres. | Warrantee name. | Am't of sale. | Years. | County. | Road tax. | Owners. |
|---|---|---|---|---|---|---|
| 372 | Rope, Samuel, | $4.48½ | 1828 | | | |
| | | | 1829 | | | |
| | | | 1830 | | | |
| | Taxes paid Treasurer. | | 1831 | | | |
| | | | 1832 | | | |
| | | | 1833 | | | |

ASSESSMENTS—SUGARLOAF TOWNSHIP—UNSEATED LANDS.

1832—372 acres, Rope, Samuel, val. $372.

1833—372 acres, Rope, Samuel, val. 372.

COMMISSIONERS' LIST TO TREASURER OF UNSEATED LANDS FOR TAXES OF 1832 AND 1833—SUGARLOAF TOWNSHIP.

| Acres. | Valuation. | Warrantee name. | Years. | County tax. | State. |
|---|---|---|---|---|---|
| 372 | $372 | Rope, Samuel, | 1832 | $1.86 | .37$\frac{2}{10}$ |
| | | | 1833 | 1.86 | .37$\frac{2}{10}$ |

Under head of Owners, " Charles S. Coxe, not paid."

It was admitted that the treasurer's sale-book for 1834 was lost January 9th 1841, and had not been in the proper office since.

28 P. F. SMITH—18

[Coxe *v.* Deringer.]

Deed, June 9th 1834, B. A. Bidlack, treasurer, &c., to Charles S. Coxe, for the Samuel Rope tract, acknowledged August 4th 1834. Treasurer's receipts for taxes from 1840 to 1871, inclusive, paid by Charles S. Coxe on a number of tracts, including the Samuel Rope.

Defendants then offered the sales-books of the treasurers of Luzerne county from 1838 to 1872, inclusive, to show that the custom of the county had been during that time to note all adjournments of treasurer's sales on the sales-books, and that no long continued custom had prevailed of adjourning sales with notice of the adjournment. The offer was objected to, rejected and a bill of exceptions sealed.

They then gave in evidence from the commissioners' sales-books, the amount of costs to commissioners on their purchase of the Samuel Rope tract in 1820, including purchase-money, interest, taxes to 1824, costs, &c., amounting to $34.04½ ; also, the sale to Henry Deringer in 1826, and deed June 5th 1827 ; they then rested.

In rebuttal the plaintiffs offered to show from the records of the treasurer's and commissioners' office, that at the time the Samuel Rope contract was sold by the treasurer to the commissioners in November 1820, four other tracts were sold on the same day, in the names of John Brady, Jos. Brown, John McGowan and Job Rope, and that at the sale of the commissioners, July 8th 1826, they sold these four tracts, with the Samuel Rope tract, to Henry Deringer. That Henry Deringer, after his purchase from the commissioners in 1826, paid the taxes on these several tracts, which belong to the same body and lie contiguous to each other, year by year, to the treasurer, until his death in 1868. That Henry Deringer resided in Philadelphia; that he kept his receipts for the payment of taxes on these several tracts of land all together in a place where he was accustomed to keep his valuable business papers in his dwelling-house. That after his death, by inadvertence, these receipts, with other papers, were destroyed; to be followed by proof of witnesses, who saw the receipts for these lands, that they were receipts for the payment of taxes on these five tracts for a long series of years, covering the years for which they were sold at the treasurer's sales, under which the defendants claim title in this case.

Defendants objected to evidence of tax-sales of any tract but the Samuel Rope tract; but not to any legal evidence of payment of taxes on the Samuel Rope tract.

The offer was admitted, and a bill of exceptions sealed.

The plaintiffs then gave in evidence assessments in Sugarloaf township, on the lands of persons named in the offer, sales of the tracts by the treasurer to the commissioners in 1820, and sales by the commissioners of the same tracts in 1827, to Henry Deringer ; also, certificate of connected draft of seven tracts, including Sam-

[Coxe v. Deringer.]

uel Rope and the four tracts mentioned in the order. They then
offered books from the office of the treasurer, purporting, as
endorsed thereon, to be Zurah Smith's. sale-books 1828 to 1830,
containing the following entry:—

| Acres. | Warrantee name. | Year. | Co. tax. | R. tax. | Costs. | Am't. | Time of sale. |
|---|---|---|---|---|---|---|---|
| 372 | Rope Samuel, | 1827 | $186 | | 2.62½ | 4.48 | Paid before |
| Paid before sale. | | | | | | | sale. |

for the purpose of showing that the taxes on the tract in contro-
versy were paid before the sale, under which the plaintiffs' claim
took place.

The defendants objected to the offer, because the entry on the
treasurer's book, that the taxes were paid before the sale, was not
sufficient to contradict the deed from the treasurer to defendants.
The offer was admitted, and a bill of exceptions was sealed.

For the purpose of proving the loss of tax-receipts, the plaintiffs
introduced testimony as follows:—

W. H. Todd, son-in-law of Henry Deringer, testified: that he
knew Deringer first in 1838; some time afterwards he asked wit-
ness to look at his receipts for taxes, relating to his five tracts of
coal-land in Luzerne county—the Samuel Rope, Robert Brady,
John McGowan, Job Rope and Joseph Brown; he gave witness
the deeds for the tracts; the tax-receipts were among the papers
given to witness. Witness then spoke of having employed Mr.
Hakes as counsel, and of going on the ground to survey the lands;
he gave the papers relating to the survey to Deringer, and in 1848
gave the papers, including the tax-receipts, at Deringer's request,
to Mr. Hakes and Mr. H. B. Wright, whom Mr. Deringer had
employed as counsel in reference to the lands; the receipts he
afterwards saw in a bundle at Deringer's house; he never had had
them since, and did not know into whose hands they passed; at
that time Deringer kept his title-papers in a closet under a stair-
way in his front building.

Calhoun M. Deringer, a son of Henry Deringer, testified that he
was familiar with his father's papers; he kept them in the closet
under the stairway. In February 1868, Mr. Deringer, then sick
in bed, received a letter from the treasurer of Luzerne county
about the taxes; he directed his son-in-law, Dr. Clark, who occu-
pied the house, and had the key of the closet and possession of his
father's papers, to bring up his tax-receipts and title-papers; he
brought them up and laid them upon the table—commissioners'
deeds, two bundles of tax-receipts, &c. Dr. Clark wrote to the
treasurer, explaining the receipts, and Mr. Deringer told him to
take the bundles of tax-receipts to the closet. A few days after-
wards Mr. Deringer received a letter enclosing a bill for taxes of
the five tracts of land; a brother drew a check and sent it up, and
a few days afterwards the treasurer sent down a receipt for the
taxes of 1866 and 1867; the receipt was in the brother's hands..

[*Coxe v. Deringer.*]

Dr. Clark held possession of Mr. Deringer's papers till the fall of that year, when the brother's widow moved into the house. In January 1872 witness asked his brother's widow for the receipts: he did not get them; he had never seen them after Dr. Clark put them into the closet. When witness discovered that of the papers in the closet some had been burned and some scattered in the yard, he had all the papers in boxes, used for packing gun-barrels, brought to his house; he found two tax-receipts, two official letters from Colonel Bittenbender; one from Z. Smith, treasurer; in all about forty or fifty papers.

Mrs. Deringer, widow of Bronaugh M. Deringer (a son of Henry Deringer), testified, that her husband had died in the August after his father, and in the next October she took possession of Mr. Deringer's house, which had been occupied by Dr. Clark. Mr. Deringer's papers had always been kept in the closet under the stairway; when she moved in she got the key of the stairway closet from Dr. Clark, and got it again from him in the spring following; she did not disturb the papers until her brother-in-law, Theophilus T. Deringer, who was acting executor, came to the house; she asked him what disposition she should make of the papers; he said his father owed nothing; she could burn them or do what she wished with them; she burned a good many, some were scattered around and taken to the factory, which was near the house in the yard. The closet had been kept closed during the winter; Dr. Clark had the key. She was present when the papers were brought to Mr. Deringer in his sick room; she stated the circumstances, as Calhoun M. Deringer had done. There was over a barrel full of letters, receipts and books in the closet; a portion were taken to the factory for packing; Mr. Deringer was very careful in preserving his papers; Dr. Clark died in 1869.

Eliza Clark, widow of Dr. Clark, testified that in 1867 she went to her father's house to take care of him; she testified as the other witnesses, as to the place he kept his papers, &c. In 1849 Mr. Hakes, her father's counsel, came to the house and brought two bundles of papers with him and left them with her father; she knew of the writing of the letter in 1868, and of the papers being returned to the closet.

H. B. Wright, Esq., testified that when he prepared an opinion (which was shown him), he did not examine the commissioners' office, but had papers before him submitted to him by Mr. Hakes; he could not state what they were.

C. E. Rice, Esq., testified that he had read law with Mr. Hakes, who died in 1873; he had charge of Mr. Hakes' papers; he made search at two different times amongst his papers for those connected with the Deringer estate; Mr. Hakes had had a bundle of papers connected with the estate; they had been sent for.

The plaintiffs then offered entries in the commissioners' tran-

scripts for the purpose of proving payment of taxes on all Deringer's tracts in Sugarloaf township.

The entries were:

Page 100.   " Henry Deringer·to Luzerne county, Dr."

The charges on the Brown, Brady, McGowan and Job Rope tracts, in Sugarloaf township for 1827, 1828, were for county and road tax, each $6 ; then followed :

|   |   |   |   | Co. | Rd. |   |
|---|---|---|---|---|---|---|
| " 372 | Rope, Samuel, | Sugarloaf | 1827 | $1.86 | 1.86 |   |
|   |   |   | 1828 |   | 1.86 | 5.58 |
|   |   |   |   |   |   | $29.58 |

" Cr.   10th Jan. 1829, by cash per J. Bittenbender, Esq., $29.58."

Page 105.   Similar entries of 1828–1829, and same amounts ; also,

" Cr.   5th Jan. 1830, by cash of J. Bittenbender, $29.58."

" Paid and Posted."

Page 146, same entries for 1830–1831 ; the amounts on all were increased by including road tax for each year; the total footing up,                          $39.44

" Cr.   4th Jan. 1832, by cash per Col. Jno. Bittenbender, $39.44."

G. Nagle, clerk of the commissioners, testified that there was no book for 1832–1833 like the above-mentioned transcript-book.

The defendants objected to the evidence on page 100, as the payment of taxes on the Samuel Rope tract shown by the entry being made on January 10th 1829, after the treasurer's sale, could not affect such sale; also to evidence of payment of taxes contained in any of said entries on land other than the Samuel Rope tract ; also, as to all for the purpose of proving a redemption of the sale from the treasurer to the commissioners in 1828.

The offer was admitted and a bill of exceptions sealed.

The plaintiffs then proposed to ask W. H. Todd (before examined), for what years the tax-receipts were given that he had delivered to Mr. Hakes.

The defendants objected, because there was no proper evidence of the existence, loss or destruction of the receipts, so as to introduce evidence of their contents, and that it was not shown that the witness had knowledge of the handwriting of the officers signing the receipts.

The evidence was admitted and a bill of exceptions sealed.

The witness testified that the receipts purported to be from the treasurer of Luzerne county for taxes from 1826 up to the time they had been handed to him, which was between 1838 and 1840 ; tax-receipts were after that time forwarded when written for and money paid; the chain of tax receipts was complete on the five tracts of land from 1826 to 1844.   Mr. Deringer was a very particular man about his papers ; the name of one treasurer was Smith, another was Williams; Bittenbender corresponded with

[Coxe *v.* Deringer.]

Mr. Deringer at an early period; the receipts were for every two years.

The plaintiffs then offered to prove by Calhoun M. Deringer that shortly before the death of Mr. Deringer, he saw in his possession sundry receipts for taxes on the five tracts, including the Samuel Rope, and to prove by him by whom the receipts purported to be signed and the contents.

Objected to, because no sufficient preliminary proof had been given of the existence, search and loss of the receipts.

The offer was admitted, and a bill of exceptions sealed.

Witness had been in the habit of endorsing his father's receipts for some years previously to 1840 and from 1847 to 1850; he endorsed receipts on the lands, including the Samuel Rope; they covered the time from 1826 to 1840; he found three of the receipts that had survived the fire; they were amongst the papers brought from the factory; each receipt covered two years; there were receipts in the closet from 1826 to 1849, which Dr. Clark had brought to his father's room, when he was sick; up to about 1836 the receipts purported to be for taxes paid by John Bittenbender and Joseph Morgan, who were agents for his father. Witness had searched within six months at Morgan's house through all his papers for papers connected with these lands, and found none. Morgan died in 1869; Bittenbender is dead; he searched among his papers but found none; witness had a letter from treasurer Jayne concerning taxes on these lands for 1841–1842; he found also two or three checks payable to Luzerne county taxes; also, a check of Mr. Deringer, dated October 29th 1861, to C. Spencer, treasurer of Luzerne county, endorsed by him; also, check dated November 9th 1863, for taxes to James Walsh, treasurer of Luzerne county; found also, amongst the rubbish, five check-books with marginal stubs. Receipt January 5th 1830. Z. Smith, treasurer for $29.58, taxes for 1828–1829, including Samuel Rope, per hands of J. Bittenbender. Letter, February 4th 1829, from Z. Smith, treasurer, to Mr. Deringer, saying that a statement which his letter contained showing payments on the five tracts—that on the Samuel Rope being $34.04½—was all that appeared on the county books, that Myers, a former treasurer, had accounted for on settlement, and that there was a deficit of taxes of 1826, as they were not in the transcript of sale; the receipts given by Smith to Bittenbender included the county tax of 1827, and road taxes of 1827–1828. There was also a statement of taxes paid on the five tracts, including the Samuel Rope, for the years 1827–1828. Smith then says in his letter, " The foregoing is a transcript copy which I gave Mr. Bittenbender," &c. Letter, February 27th 1842, W. S. Jayne to Henry Deringer, and accompanying check dated March 2d 1842 for $58.42; check October 29th 1861, to C. Spencer, treasurer, for $233, endorsed by him November 9th 1863. H. Deringer to J. Walsh, treasurer for $241.33, and endorsed by him.

They then gave in evidence numerous entries from, "treasurer's transcript-books of unseated lands," containing statements of Mr. Deringer's indebtedness to Luzerne county on the five tracts, including the Samuel Rope. That for 1838, 1839, amounted to $30.90; at the bottom of it is: "30th March 1840, received the above in full." For 1840, 1841, the amount was $58.88; to this there was no receipt.

The other statements were also each for two years, viz., 1842, 1843; 1858, 1859; 1860, 1861; 1862, 1863; 1864, 1865; 1866, 1867—all having receipts as having been paid by Henry Deringer; 1868, 1869, and school tax of 1867; 1870, 1871; 1872, 1873— all receipted as having been paid by Theophilus T. Deringer, executor. It was admitted that John Bittenbender was elected commissioner of Luzerne county in 1826.

The following were points submitted by the defendants:—

1. The law requires a sale of unseated land for non-payment of taxes to be made by the treasurer on the second Monday of June, or at subsequent days in pursuance of adjournment. And that as the sale under which the plaintiff's claim was made on the 8th of November 1820, and as no evidence has been offered to show that any adjournment of the treasurer's sale to that day was made at any previous day upon which the treasurer had power to sell, the sale on the 8th of November 1820 was invalid and the plaintiffs cannot recover.

2. The curative provisions of the Act of March 13th 1815, do not apply to sales made by commissioners, and therefore as the plaintiffs have shown no compliance with the Acts of Assembly relative to the sale of lands by the commissioners, they cannot recover, and the verdict of the jury should be for the defendants.

These points were refused.

4. While the entry "paid before sale" on the treasurer's sale book of 1828, unexplained by other evidence, might have been competent to be submitted to the jury upon the question of payment of taxes before sale, yet taken in connection with the entry in the commissioners' transcript book, offered by the plaintiffs, and the letter from Zurah Smith, treasurer, dated 4th February 1829, also offered by the plaintiffs, all the evidence upon this point shows that the taxes were not paid until January 10th 1829, and such payment cannot invalidate the title acquired by the commissioners in 1828, and therefore the plaintiffs cannot recover.

The court answered: "This point involves a question of fact and the jury under the instructions already given must determine it."

6. If the jury believe the taxes for which the land was sold, by the treasurer in 1828, were not paid before the sale, such sale would vest a title in the commissioners, subject to the right of redemption by the former owner, and as no redemption took place within five years, and no permissive redemption was made

[Coxe *v.* Deringer.]

thereafter the title of Henry Deringer was divested, and the plaintiffs cannot recover.

8. There is no evidence from which the jury can find that the taxes for which the Samuel Rope tract was sold in 1834 were paid before sale.

These points were referred to as answered in the general charge.

The court, after referring to some preliminary matters, charged:

* .* * " During the year 1818, and while the title to the land in controversy was held in trust, as I have before explained, the assessment book for Sugarloaf township, in this county, where the land lies, exhibits a return of the Samuel Rope tract with a content of 372 acres. The assessment book for the same township, in the year 1819, exhibits a return also of the same land, with a like content, and a valuation of $372. The assessment of a tax amounting to $1.86, by the proper officers, followed as a matter of course. No payment of this tax was made within the period prescribed by the statute; and, therefore, it became the duty of the treasurer on the second Monday of June 1820, having first given the requisite notice, to make a public sale of the whole tract for the unpaid tax, together with all costs necessarily accrued. [While, under the law, all sales of this character were to be commenced on the second Monday of June, still, authority was given to the treasurer to adjourn from day to day, if it should be found necessary so to do. The late George M. Hollenback was then treasurer of Luzerne county ; and, if we are to judge from the official entries and from the documents themselves, the presumption is legitimate, indeed, irresistible, that the necessity for that sort of adjournment contemplated by the statute, then really existed. True, no note of adjournment from day to day was made by the officer either in the sale book, or elsewhere; true, also, the fact appears as well from the treasurer's deed, as from an entry in the sale book, that he sold this tract of land on the 8th of November 1820. But, upwards of fifty-three years have elapsed since this official act was consummated. That all things were done in due form to warrant it, is a presumption now not to be resisted.]

" Again, under the law, it was the duty of the commissioners of Luzerne county whenever a tract of unseated land thus offered for sale by the treasurer, did not have bidden for it a sum equal to the amount of tax for which it was advertised, and the costs accrued, to bid off the same, and take a deed therefor for the use of the county. Such a contingency seems to have happened at that sale. At all events, George M. Hollenback, treasurer, on the 2d of December 1820, executed and delivered to Cyrus Avery, Joel Rogers and Samuel Yost, commissioners of Luzerne county, a deed containing the ordinary recitals, for the Samuel Rope tract. This deed, vested the title to the tract in the commissioners for

the use of this county, subject only to the redemption right of the real owners, which had five years to run from the date of the treasurer's sale. &ast; &ast; &ast;

"The commissioners of Luzerne county held the Samuel Rope tract from the 8th of November 1820 until the 8th of July 1826, or during a period of five years and eight months. On the date last mentioned, Deodat Smith, Arnold Colt and John Bittenbender, then commissioners, sold the Samuel Rope tract to Henry Deringer for the consideration of thirty-four dollars and four cents, as appears from the official record, and from the deed itself.

"The plaintiffs are conceded to be the representatives of Henry Deringer, now deceased. Their right to recover here must depend upon the strength of their own title, not upon the weakness of that of their adversaries. The sale by the commissioners, and the deed under it, constitute the very foundation of their title. But the validity of that sale is challenged, on the ground that there has been no affirmative showing of a compliance by the commissioners with the provisions of the Act of March 29th 1824, giving them authority to sell, but requiring that notice of such authority, accompanied by a designation of the tracts to be sold, should be published, and that written or printed advertisements should also be put up. The commissioners' land book shows nothing further in connection with the sale, than that it was made to Henry Deringer on the 8th of July 1826; the deed in pursuance of it is dated on the 5th of June 1827, and contains no more than the ordinary recitals in a deed of that character. This is the whole sum of the showing in respect to that sale.

"A question of great importance arises out of this state of things, It is, however, a question for the court, not for the jury. &ast; &ast; &ast; That this commissioners' sale was made by the proper officers, is not denied; that nearly half a century has passed by since it was consummated, is a recognised fact; that it was conducted under all the solemnities appertaining to official position, no one will now even attempt to gainsay; why, then, should not the rule, long ago become a maxim, *ex diuturnitate temporis, omnia præsumuntur rite et solemniter esse acta,* apply, relative to compliance by the commissioners with the requisites of the statute authorizing such sales? The notices, designations of tracts to be sold, and the written or printed advertisements referred to in the statute, have rarely, if ever, been made matters of record, either here or elsewhere. And as the law stands now, however necessary it may be to produce proper evidence of them, to support a commissioners' sale, made within a very short period, comparatively, it is very difficult, indeed, almost impossible to do so. But when upwards of forty-seven years have rolled by, the production of such proof must be recognised as an actual impossibility. &ast; &ast; &ast; Again, it

[Coxe *v.* Deringer.]

is a rule of law that an instrument in the nature of a deed, unblemished by any alterations, coming from a proper source, correct in form and execution, and more than thirty years old, is ancient; that it, therefore, proves itself, and the bare production of it is sufficient. Of course every thing about such a deed must be in favor of its genuineness; it must be free from every just ground of suspicion. But are commissioners' deeds to be outside of the pale of presumption altogether, no matter what their age or features may be? Whenever such becomes the recognised rule, the flood-gates of litigation will be opened all around us. * * *

"[You have already been instructed, that the sale by the treasurer, on the 8th of November 1820, and his deed in pursuance of it, dated December 2d, following, to the commissioners, vested a good title to the Samuel Rope tract in the county of Luzerne. I now instruct you, that the sale of it by the commissioners on the 8th of July 1826, and their subsequent deed, dated the 5th of June 1827, to Henry Deringer, in pursuance of that sale, vested in the latter a good title to the land.]

"Again, though the ownership of the Samuel Rope tract has thus been vested in Henry Deringer, the land continued to be unseated, and was, therefore, chargeable with taxes to the same extent, and in the same manner, as other unseated land of equal value. The assessment of a tax upon it by the proper officers, and the neglect of the owner to pay it for one whole year, rendered the land again liable to sale. The assessment book of Sugarloaf township for the year 1826, shows a return of the Samuel Rope tract as unseated, with a content of 372 acres, and a valuation of $372. The assessment book of the same township for the year 1827, exhibits a similar showing. The book of commissioners' rates and levies for the year 1826 and 1827, shows a like content of acres in the tract, a valuation of it for the latter year of $372, and the assessment of a tax upon it, amounting to $1.86. Under the head of reputed owners, a brief entry occurs which would seem to indicate that the tract had been sold to the commissioners in 1820, and to Henry Deringer in 1826. However, on the 15th of December 1828, pursuant to this assessment, and the alleged non-payment of the tax within the statutory limit, Zurah Smith, then treasurer, sold the land to John Bittenbender, Isaac Harding and William Swetland, commissioners of the county of Luzerne. The treasurer's deed of that date, containing the usual recitals, has been given in evidence.

"If there had been no further showing with respect to this sale, I should be obliged to say that the title of Henry Deringer to the Samuel Rope tract had been divested by virtue of it; and that the plaintiffs, therefore, could not recover in the present action. The treasurer's sale-book for 1828, containing the names of the tracts of unseated land to be sold for taxes that year by the trea-

surer, has been put in evidence.    The Samuel Rope tract is among them.    The number of acres, and the assessment of a tax corresponding with the assessment-book of Sugarloaf township for 1827, and with the book of commissioners' rates and levies for the years 1826 and 1827, are set out in the usual form.    The entry on the left-hand page of that book is as follows: 'Acres 372—Rope, Samuel—year 1827—county tax $1.86—costs $2.62½—amount $4.48½.'    On the same page, and directly under this entry, are the words, 'Paid before sale.'    And on the opposite page, in a column set apart for the name of any purchaser, is also entered the words, 'Paid before sale.'    But nowhere in the book is there an entry, showing that the tract was sold that year, by the treasurer to the commissioners.    The treasurer's deed-book, however, does show that such a sale was made, namely, on the 15th of December 1828.

"Now, if the tax of 1827 was 'paid before sale,' as the treasurer's sale book indicates, Zurah Smith, the then treasurer, had no authority whatever to sell the land to the commissioners, or to anybody else; and, no matter though he did so, and executed and delivered a deed accordingly, it was a harmless proceeding altogether and did not affect the title of Mr. Deringer at all.    But another book has been put in evidence, called the commissioners' transcript-book.    This seems to be a book which might properly be denominated an account-book.    It contains the account of unpaid taxes for every two preceding years on unseated land, charged up against the respective owners.    For the years 1827 and 1828, Henry Deringer is charged with the taxes assessed upon the several tracts of land owned by him in this county.    Among them is the Samuel Rope; and, for the year 1827, a tax of $1.86 is marked as having been assessed against it, and is charged up against Mr. Deringer.    This is the same tax for which Zurah Smith, the treasurer, made the sale to the commissioners on the 15th of December 1828.    The credit side of Mr. Deringer on this book, contains an entry as follows: '1829 January 10th, by cash, pr. J. Bittenbender, Esq., $29.58,' being the sum of the taxes for 1827 and 1828, assessed upon all the unseated lands of Mr. Deringer in the county, and charged up against him.    The aggregate, $29.58, includes the tax of $1.86, assessed against the Samuel Rope tract in 1827.    If this tax was not paid until the '10th of January 1829,' as shown by the commissioners' transcript-book, the treasurer's sale to the commissioners was good, and the title of Mr. Deringer to the Samuel Rope tract was divested by it.    Payment of a tax, for which a treasurer's sale is about to be made, prior to the sale, saves the title of the owner, no matter what the treasurer may do afterwards; but payment of the same tax, after the treasurer has made the sale, accomplishes no such result, neither does it work a revocation of the title conveyed.

" The treasurer's sale book and the commissioners' transcript-book are records.   Such books ordinarily import verity in respect to all matters legitimately made the subject of entry in them.   The construction of such entries is usually for the court, not for the jury; but here the entry in one book is at variance with the entry in the other ; here the matter of record in one, continues the existence of a title, while the matter of record in the other extinguishes it, and gives validity to another.   Under such circumstances, the question arises, which of the two records is correct?   The disposition of the question is for the jury, under all the evidence bearing upon the point. * * *

" The character of the Samuel Rope tract continued unchanged long after the year 1828.   It was unseated land, and, therefore, liable to taxation and its incidents, as it had been previously.   It is not material how the proper officers for assessing taxes may have regarded the title.   The commissioners seem, however, to have regarded it as vested in the county of Luzerne, by virtue of the treasurer's sale in 1828.   Their record containing a list of the unseated lands purchased for the county, from 1816 to 1836, indicates that fact.   Taxes were assessed upon it, however, for the years 1828 and 1829, and were charged up against Mr. Deringer in the commissioners' transcript-book.   Similar taxes for the years 1830 and 1831 were assessed, which were likewise charged in the same book against Mr. Deringer.   The former he paid on the 5th of January 1830 ; the latter on the 4th of January 1832.   This fact is shown by the proper record.   The assessment-books of Sugarloaf township for the years 1832 and 1833, respectively, show a return of the Samuel Rope tract as unseated land, having a content of 372 acres, and a valuation of \$372.   For the year 1832, a state tax of $37\frac{2}{10}$ cents, and a county tax of \$1.86, were assessed upon it.   For the year 1833, a tax similar in character and amount was also assessed upon it.   And so far as any *record* evidence to the contrary is concerned, the sum of these taxes remained unpaid for more than one year after the time of their assessment.   Whereupon, B. A. Bidlack, treasurer of the county, on the 9th of June 1834, sold the tract to Charles S. Coxe.

" This sale raises another important question in the case.   And being purely a question of fact, the disposition of it, under all the testimony bearing upon it, will be for you.   If you shall find, precedent to its consideration, that the treasurer's sale of the Samuel Rope tract to the commissioners in 1828, vested in them, for the use of the county, a good title, although under the law, the land should have remained the property of the county for a period of five years, subject to redemption by the owner, but exempt from sale by the treasurer for taxes assessed and unpaid in the meantime ; yet, if Mr. Deringer, from any cause, neglected to pay the taxes of 1832 and 1833, based as they were, upon a return and

[Coxe *v.* Deringer.]

valuation, the sale by Mr. Bidlack, the treasurer, in 1834, though irregular, passed the title to Charles S. Coxe. Payment by Mr. Deringer, within five years from the date of the treasurer's sale in 1828, of the taxes on which that sale was based, together with the interest and costs, and payment by him also of all the taxes assessed upon the tract, together with interest, during that period, would have entitled him to a reconveyance by the commissioners. If this was not done, his title was irrevocably gone. Payment of a part of the taxes assessed in the meantime, such as those of 1828, 1829, 1830 and 1831, was not sufficient.

" It is claimed on the part of the plaintiffs, however, not only that the treasurer's sale in 1828 was invalid, because the taxes on which it was based had been 'paid before sale,' but that the treasurer's sale in 1834 was invalid also, and for the same reason. As has been seen, the commissioners' transcript-book shows the payment of the taxes by Mr. Deringer for the years 1828, 1829, 1830 and 1831; but there is no showing in that book, or, indeed, in any other book or record in the commissioners' or treasurer's office, that the taxes of 1832 and 1833 were paid by Mr. Deringer, or by anybody else. George M. Nagle, the present clerk of the commissioners, testifies that he has made a thorough search of the office, and that the commissioners' transcript-book, now before us, is the only one of the kind remaining there, in which an account similar to that with Mr. Deringer and others, already referred to, appears to have been kept of the unpaid taxes on unseated land, from the year 1831 to the year 1838. Since that time, however, similar accounts have been continued. It has been admitted that the treasurer's sale book for 1834 disappeared from the proper office as long ago as January 1841, and that no trace of it has been discovered since that time. Along with that admission, came a general recognition by counsel on both sides, that there had been official misdoing with the records of the commissioners' and the treasurer's office, covering a period intervening between 1834 and 1840 ; that incumbents of the latter, during that period, had been charged as defaulters ; and further, that one of them had been prosecuted in the criminal court for the more serious offence of. stealing the missing books or records.

" Were the taxes of 1832 and 1833, upon the Samuel Rope tract paid by Mr. Deringer prior to the treasurer's sale in 1834 ? Usually, when the owners of unseated lands pay the taxes assessed from year to year upon them, the officer receiving the money not only makes an entry of payment in the proper record, but he gives a receipt designating the tracts upon which the taxes have been paid, the number of acres contained in them, the years for which the taxes were assessed, and the character of them, whether state, county, road, school, and the like. The production of the receipt

[Coxe *v.* Deringer.]

at any time afterwards, duly authenticated, is as operative to establish the fact of payment as the record itself.

"So far, however, as payment of the taxes upon the Samuel Rope tract, by Mr. Deringer, assessed during the years 1832 and 1833, is concerned, we have seen that there is no record indicating it. More than that, the plaintiffs have produced no receipt vouching their payment. They allege, it is true, the existence of such a receipt, given by the proper officer, and at the proper time, during a period of thirty-five years, or until about the year 1869, when, together with others of the same character, but for later years, it was destroyed by fire, or otherwise inadvertently lost.

"Receipts of a public officer, like a county treasurer, purporting to be over thirty years old, fall within the category of ancient documents. Their existence in the hands of the proper custodian at one time, and their subsequent destruction or loss, having both been satisfactorily established, secondary evidence concerning them becomes admissible."

The judge then recapitulated the evidence given to prove the existence and loss of the tax-receipts, and said, in conclusion :—

["I have now called your attention to the prominent features of this case, and have also recounted a large portion of the direct testimony in connection with it. While the witnesses on the part of the plaintiffs, or the more important ones, at least, are parties to the case, and therefore directly interested, yet, under the law, they are competent witnesses. You have seen them upon the stand; you have heard them testify; you have noticed their manner of testifying; you have been aware of their interest: their credibility is for you. I have only to say, that if Henry Deringer was the particular and careful old gentleman about his titles and his papers, as represented by these witnesses; if he did pay the taxes assessed upon the Samuel Rope tract in 1827, before the treasurer's sale of it, in 1828; if he did, also, pay the taxes assessed upon it in 1832 and 1833, before the treasurer's sale of it, in 1834; if the record evidence of the latter payment was destroyed by a defaulting public officer in the attempt to blot out traces of his own wickedness and crime; if the receipt, too, vouching such payment was burned in the fire, kindled for a most unusual purpose, in 1869; then it would be simply monstrous if his children and descendants should be ravished of their inheritance. But unless you shall be clearly satisfied, from all the evidence in the case, that the taxes upon the Samuel Rope tract for the year 1827, and for the years 1832 and 1833, also, were paid before the treasurer's sales were made, the plaintiffs are not entitled to recover.]

"To recapitulate: I have instructed you that the treasurer's sale, in 1820, was good, and vested a valid title to the Samuel Rope tract in the commissioners, for the use of the county; I

[Coxe *v.* Deringer.]

have also instructed you that the commissioners' sale, in 1826, was good, and vested a valid title to the Samuel Rope tract in Henry Deringer: if, therefore, you find that the taxes for 1827 were 'paid before sale' by the treasurer in 1828, and further, that the taxes for 1832 and 1833 were also paid before sale by the treasurer in 1834, then your verdict should be for the plaintiffs for the land described in the writ; if otherwise, your verdict should be generally for the defendants."

The verdict was for the plaintiffs.

The defendants took a writ of error, and assigned for error :—

1. Admitting in evidence the treasurer's sale book and deed, showing sale on 8th of November 1820 to the county commissioners.

2. Rejecting the offer of the sales books of the treasurers of Luzerne county, to show that there was no long-continued custom of adjourning sales without notice of it.

3. The part of the charge first enclosed in brackets.

4. The answer to defendants' first point.

5. The part of the charge secondly enclosed in brackets.

6. The answer to defendants' second point.

7. Admitting evidence to show that the four other tracts were sold to the commissioners by the treasurer with the Samuel Rope tract, and that the commissioners sold them on the same day with the Samuel Rope tract to H. Deringer.

8. Admitting the book purporting to be the treasurer's book of Zurah Smith.

9. Admitting the entries in the commissioners' transcript, for the purpose of showing payment of taxes on the Samuel Rope tract after the sale of the treasurer to the commissioners.

10. Admitting Todd to testify for what year the tax receipts which he delivered to Mr. Hakes were signed.

11. Admitting Calhoun M. Deringer to testify that he had seen in H. Deringer's possession receipts for taxes on the five tracts.

12, 13, 14. The answers to defendants' 4th, 6th and 8th points.

15. The part of the charge lastly enclosed in brackets.

*F. B. Gowen* and *A. T. McClintock*, for plaintiffs in error.—
To sustain a treasurer's sale of unseated land for taxes, there must be a proper assessment; taxes unpaid for one year and a public sale: Cuttle *v.* Brockway, 8 Casey 45; Bratton *v.* Mitchell, 1 W. & S. 310.   The assessment must identify the land: Dunn *v.* Ralyea, 6 W. & S. 475; City *v.* Miller, 13 Wright 440; Lyman *v.* The City, 6 P. F. Smith 488.   The sale of tracts separately assessed as one tract passes no title: Morton *v.* Harris, 9 Watts 319.   The Act of 1815, curing irregularities, does not apply to commissioners' sales; Jenks *v.* Wright, 11 P. F. Smith 410; Hess *v.* Herrington, 23 Id. 438.   Evidence of payment of taxes for years prior to those for taxes of which the land was sold is inad-

[*Coxe v. Deringer.*]

missible : Ankeny *v.* Albright, 8 Harris 157 ; Kennedy *v.* Daily, 6 Watts 269 ; Beale *v.* Commonwealth, 7 Watts 183. The evidence of existence of receipts, loss, search, &c., was not sufficient to give their contents : Porter *v.* Wilson, 1 Harris 641.

*S. Woodward* and *S. Linn* (with whom was *C. Deringer*), for defendants in error.—The evidence to admit proof of the contents of the receipts was sufficient : McReynolds *v.* Longenberger, 7 P. F. Smith 30. The presumption is that the treasurer's sale was according to law : McCoy *v.* Michew, 7 W. & S. 389 ; Huzzard *v.* Trego, 11 Casey 9. The same inferences and presumptions will apply to a sale to the commissioners as to any other person : Peters *v.* Heasley, 10 Watts 208 ; Laird *v.* Hiester, 12 Harris 452. Evidence of payment of taxes, &c., on other contiguous tracts belonging to Deringer was admissible : Woodside *v.* Wilson, 8 Casey 58. The search was sufficiently diligent : 1 Greenl. Ev., sect. 558 ; Spalding *v.* The Bank, 9 Barr 28 ; Hemphill *v.* McClimans, 12 Harris 367 ; Flinn *v.* McGonigle, 9 W. & S. 75 ; Ardesco Oil Co. *v.* Gilson, 13 P. F. Smith 152. In the absence of proof that the requisites have not been performed, and where the proceedings are consistent with due regularity, the law will, after a lapse of thirty years, presume that all the requisites were complied with. There is nothing to which the maxim, *omnia præsumuntur rite esse acta*, applies with so much force as to a tax title: Cuttle *v.* Brockway, 12 Harris 147 ; Heft *v.* Gephart, 15 P. F. Smith 510 ; Robins *v.* Bellas, 4 Watts 255 ; Alexander *v.* Bush, 10 Wright 62 ; McCoy *v.* Michew, 7 W. & S. 389 ; Lackawanna Iron Co. *v.* Fales, 5 P. F. Smith 90 ; Best on Presumptions 78, sect. 67 ; Morton *v.* Harris, 9 Watts 322 ; McHenry *v.* McCall, 10 Id. 456. The continual claim for a period of nearly fifty years, with acts of ownership and payment of taxes, taken in connection with the long-continued non-claim on part of the defendants, and many other circumstances surrounding the case, afforded testimony amply sufficient to warrant a jury in finding that the taxes of 1832 and 1833 were paid before the sale : Alexander *v.* Bush, 10 Wright 62 ; Iddings *v.* Cairns, 2 Grant 88 ; Bartholomew *v.* Leech, 7 Watts 472 ; Devor *v.* McClintock, 9 W. & S. 80 ; Lackawanna Iron Co. *v.* Fales, 5 P. F. Smith 90. The presumptions from the evidence to show payment of taxes of 1832, 1833, were presumptions of fact which it was the duty of the court to submit to the jury : Reynolds *v.* Richards, 2 Harris 208 ; Tanner *v.* Hughes, 3 P. F. Smith 289 ; First Nat. Bank of Bellefonte *v.* McManigle, 19 Id. 156 ; Best on Presumptions, sect. 27, page 32 ; Alexander *v.* Bush, 10 Wright 62 ; Steiner *v.* Coxe, 4 Barr 13.

Mr. Justice WOODWARD delivered the opinion of the court, May 10th 1875.

[Coxe v. Deringer.]

The cases of Cuttle v. Brockway, 12 Harris 145, Iron Co. v. Fales, 5 P. F. Smith 90, and Heft v. Gephart, 15 P. F. Smith 510, have closed against all debate the question of the application of the maxim *omnia præsumuntur esse rite acta* to tax sales under the Act of 1815. The ground of the objection made by the defendants below to the deed to the Luzerne commissioners of the 2d of December 1820, was that the sale had not been made on the second Monday of June, nor on any other day to which it was shown to have been adjourned. The fourth section of the Act of 13th of March 1815, declares that "no alleged irregularity in the assessment or in the process shall be taken or construed to affect the title of the purchaser" of unseated land for taxes, "but the same shall be declared to be good and legal." The sale in this instance was made on the 8th of November 1820. The deed was delivered in pursuance of it. No action of ejectment was brought by the owner within the statutory period of five years. The subsequent records in the offices of the commissioners and treasurer were made up on the assumption of the regularity of the proceedings. The deed recited the offer of the land "for sale agreeably to law." The absence of entries of adjournment from day to day was a defect of form and detail. It was "irregularity in the process," and not the omission of any essential requisite to support the title the commissioners acquired. The facts made out a case to warrant at least such a binding direction to the jury as was given in Huzzard v. Trego, 11 Casey 9, that they ought to presume the adjournments to have been duly made. In the absence of countervailing proof, there was no substantial error in the peremptory instruction to that effect in the charge of the court below.

In disposing of the questions relating to the sale by the commissioners to Henry Deringer on the 8th of July 1826, too much significance was attributed to lapse of time. If possession of the land had been taken by Deringer, the long period intervening between the date of the sale and the date of the trial, would perhaps have afforded, with the other evidence in the cause, ground for assuming that the formal provisions of the Act of 1824 had been complied with, as a presumption of law. It certainly would have warranted a charge that such a compliance ought to be inferred by the jury, as a presumption of fact. But "mere lapse of time," it was said by Lowrie, C. J., in Alexander v. Bush, 10 Wright 62, "proves nothing in favor of a title, for the older it is, without any claim being made under it, the weaker it is, and the weaker are all presumptions in its favor." It is true that Read v. Goodyear, 17 S. & R. 350, decided that, where land is sold for taxes and the warrantee makes no claim for twenty-one years, and pays no taxes during that time, it may be left to a jury to presume ouster or abandonment by him; and that length of time strengthens a title founded on a sale for taxes. In Sorber v. Willing, 10

28 P. F. Smith—19

Watts 141, however, the facts in Reed *v.* Goodyear were said by Gibson, C. J., to have been indistinctly stated, and among them was the omitted fact that there had been an entry by the purchaser at the treasurer's sale.   The curative provisions of the Act of 1815 were held in Jenks *v.* Wright, 11 P. F. Smith 410, not to be applicable to a sale by county commissioners under the Act of the 29th of March 1824.   The evidence in this case did not warrant the assertion by the court of the regularity and validity of the sale to Deringer as a presumption of law.   But there was proof of the payment of the taxes from 1826 to 1840.   At the time of the sale the land was the property of the county, and as such the commissioners conveyed it.   The deed executed by them on the 5th of June 1827 recited the performance of all the conditions requisite to support the title they conferred on their grantee.   The proceedings were spread upon the county records, and their regularity has never been assailed by the county authorities.   All these were facts for the consideration of the jury, and under them they should have been left at liberty to find whether the directions of the Act of Assembly had been duly pursued, and whether the title of Deringer was, therefore, valid.

With the remark that the evidence offered by the defendants to prove that all adjournments of treasurers' sales have been noted on the sales-book since the year 1838, was irrelevant to any apparent issue in the cause, what has been said disposes of the first six specifications of error.

The general offer by the plaintiffs, to which the seventh assignment of error relates, was unobjectionable.   Under it there was, perhaps, no necessity for showing the date of the purchase of the four tracts other than the one in controversy belonging to Deringer, and the deeds for them, but this could not have led to any confusion or embarrassment on the trial.   The five tracts were treated as a single body of land, and each tax-receipt related to them all.   The evidence affecting the Samuel Rope tract involved a reference to the others, and it was admissible, as evidence is always admissible of extraneous facts with which the subject-matter of a suit is inseparably connected.

The eighth, ninth, twelfth and thirteenth specifications are founded on the rulings of the court in regard to the sale of the land in controversy by the treasurer to the commissioners in 1828 for the taxes of 1827.   The deed recited the sale to have been made on the 25th of November 1828.   If it was valid, it divested the title Mr. Deringer had acquired by his purchase in 1826, and an outstanding title, as to him at least, was subsisting in the county of Luzerne when the cause was tried.   The books showing the assessment and the deed were given in evidence by the defendants.   In their rebutting case, the plaintiffs showed what is called in the record a " commissioners' transcript-book," containing a

[Coxe v. Deringer.]

charge against Mr. Deringer's five tracts for taxes for the years 1827 and 1828, amounting to $29.58, the charge against the Samuel Rope tract being $5.58, made up of county and road taxes, each $1.86 for 1827, and $1.86 road tax for 1828. At the foot of the statement there is a credit of the entire amount of the charge dated the 10th January 1829. The treasurer's sale book for the year 1828 was also produced by the plaintiffs, and the entry of the Samuel Rope tract on that book was permitted, under exception, to be given in evidence. The words " paid before sale" were twice written, on the right and left margins of the entry. In the commissioners' book of county rates and levies for 1826, 1827 and 1828, the tract had been charged with taxes amounting to $3.72, and in the commissioners' list to the treasurer for 1826 and 1827, a county tax for 1827 of $1.86, and a road tax for the same year and of the same amount were stated to be due. A pen appeared to have been drawn at some time through the figures " 1.86" in both places where they occurred in this last book. This evidence was submitted to the jury on the question of the payment of the taxes of 1827 before the sale to the commissioners. The regular, authorized and authentic entry in the transcript-book showed the payment to have been made on the 10th of January 1829. The very language of the entry on the sale-book implied that it was made after the sale had taken place. It is said to be in the hand-writing of Zurah Smith, the treasurer at the time. Let that be so, and it does not help the use of an unwarranted and illegal endorsement on a public record as evidence of a substantive and material fact. The entry was out of time and out of place. It was made after the sale, to which the treasurer had certified by his solemn deed. It was in contradiction of the explicit written statement of the credit appearing in the transcript-book. It was not an act done in the course of the current business of his office—it may have been made years after the transaction—from his letter to Deringer; it is not credible that he made it before the 4th of February 1829—and it depended for its accuracy perhaps upon the recollection or declarations of other parties, or upon his own memory at the very best. No direct authority is found upon this question. In Kennedy v. Daily, 6 Watts 269, all that was decided was, that when the word " paid" appears on the margin of the entry of a tract of land in the treasurer's sale-book, the purchaser could prove that the word was written after the sale, and that the same entry was usually made after the sale as well as before. In Ankeny v. Albright, 8 Harris 157, the letters " pd." on the treasurer's book were held to be no evidence of themselves, that the taxes were paid before the sale. In the last case two former county treasurers testified that they always marked the taxes in this way after the land was sold and the money paid by the purchaser, and that they always marked them in the same way when

[Coxe *v.* Deringer.]

paid at any time.  But it is manifestly essential to the security of property that muniments of title and public records should be free from the hazards that would be involved in making evidence of legends like this.  It was no part of the duty of Zurah Smith to endorse his recollection of past events on any of the books the law required him to keep as treasurer of the county.  His statement of official facts in their appropriate places and their current order would be evidence always.  His statement of a fact that rested only on his own recollection, or that of others, was not entitled to be weighed against his formal deed and a distinct, explicit and authentic record.

The admission of the evidence to which the tenth, eleventh, and fourteenth assignments of error apply, was warranted by the authority of McReynolds *v.* Longenberger, 7 P. F. Smith 13.  Other questions aside, the sale in 1834 to Charles S. Coxe vested the title to this land in him, if the taxes for the years 1832 and 1833 were not paid.  The plaintiffs were permitted to prove the existence of receipts for taxes from 1826 to 1840 by witnesses who had seen them, the loss of the receipts themselves being alleged. While such testimony is admissible, it is exceptional in its character, and is capable of producing unjust results.  It should be submitted to a jury under carefully guarded and measured instructions as to the precise point in dispute.  That point here was the payment, before the sale of 1834, of the taxes for the two preceding years.  As the cause must go back on other grounds, it is not necessary to express an opinion as to the sufficiency of the preliminary proof that was made of the search for, and loss of, the papers.  But Dr. Clark, one of the executors of Henry Deringer, had possession of the key of the closet containing the receipts for more than a year, and not only had access to them, but had charge of, and was responsible for, them.  The necessity for some examination of his papers would seem clear.  No evidence in the record traced these papers to the hands of the other executor, Theophilus T. Deringer.  Still, applications for such documents to executors or their representatives is, in all cases, a proper and safe precaution.

Everything involving substantial error that was embraced in the part of the charge to which the fifteenth assignment applies, has been adequately discussed.

Judgment reversed, and a *venire facias de novo* awarded.